My name is Andrea Yeager. I represent Mr. Donell Hines in this matter. This case presents a familiar fact pattern with a warrantless dog search of an enclosed apartment building where officers lacked the judicial findings of a warrant and do not have an exception to the warrant requirement. In this case, the court should find, as a primary matter, that Jardines does control the case. That this is clearly an unconstitutional search under the Jardines precedent in the Fourth Amendment, which, of course, was longstanding at the time of this search. Counsel, if we agree with you, why should the Leon good faith exception apply? Your Honor, because the Leon good faith exception requires exactly that. There are fundamental predicates to Leon and Davis good faith, one of which is a reasonably well-trained officer. The next being that that reasonably well-trained officer is, in fact, relying in good faith on what is apparently a valid search warrant. In this case, we don't have those facts. We don't have a reasonably well-trained officer. Unlike the Perez case, which, of course, came down a few weeks ago, we have in the record established in this case Corporal Koepke's testimony that he, in fact, received no training whatsoever, that nobody had received any training. This is at the transcript. Did the district court make a factual finding about the training of the officers? Your Honor, it was in Corporal Koepke's testimony. The suppression transcript, page 53, line 6 to 54, line 4, where Corporal Koepke describes that there's no sit-down class, that nothing else that would go through formalized legalities. There's no formalized training concerning Jardines. Quote, nobody has. And, again, he reiterates that there's no formalized training. Well, that's the evidence, but the question was, was there a finding based on that evidence? I don't believe that the district court examined that issue. Do we infer from the ruling on Leon Goodfaith that they didn't find that they were poorly trained? I think you can make that inference, Your Honor, but I don't think that specific question was addressed. Leon, and more specifically Cannon, outline in particular that Goodfaith, those kinds of exceptions, cannot save the warrant and cannot save the otherwise unconstitutional search if there's not a Goodfaith reliance and a reasonably well-trained officer. I think maybe the more pertinent question here is the pre-warrant conduct of the officers. Could you address that? Yes, Your Honor. There's two buildings, two dogs, two warrantless searches. So the first happens on September 12th. That's K-9 Curley in the apartment building 914 Betsy Ross Place. So that's building 1. But that doesn't necessarily taint the second warrant, does it? I disagree, Your Honor, because both of those warrantless searches inform the search warrant that is then later obtained. So K-9 Curley runs through the residential building and hits on all seven doors. There's six apartments, one laundry facility. K-9 Curley hits on all seven. Because what I'm more concerned about is what did the officers tell the judge to get the warrant? And was it misleading? How does that play into the analysis? Exactly, Your Honor. The officers did not tell the magistrate judge about any of those things. So they did not tell the magistrate judge that there were two separate searches with two dogs. They did not tell the magistrate that those dogs had hit on multiple locations. They did not tell the magistrate that those dogs had not simply run through the common hallways, but instead gone to the door itself. K-9 Curley scratches the door handle. K-9 Dawn goes up to the door handle, sniffs, is at least three to six inches from the door handle, and then sits. So those facts were not disclosed to the magistrate. The intrusion upon the actual apartment, the nature of the search, the lack of training, the time of day, the multiple searches and the multiple hits in both buildings on seven doors in Building 1, one door in Building 2, none of those were disclosed to the magistrate. So the magistrate was entirely without the ability to have all of the relevant legal facts and circumstances. It's pretty high standard, though. They didn't lie to the magistrate overtly. That's true. But that's not what the exception requires. There is a knowing omission or lie, of course. We don't have lies here, but we have omissions that are in reckless disregard for the truth. And under that standard, you don't have to follow. But in the case law at the time, was it clear that they needed to? I guess maybe that's really the issue. I believe so. Because Davis requires, of course, you can rely upon existing precedent at the time of the search. That's the Davis standard. But that's not what they're doing in this case. They're not relying on the Scott decision to say, well, Scott says under these facts and under these circumstances, we can search. Instead, Scott is differentiated under the facts, and they're saying because it isn't prohibited that we can do that. And that flips it on its head. It is supposed to be under Davis in good faith. We told you specifically that you can do this. And, therefore, if you reasonably rely on it because that's the precedent at the time, you're well trained, you know about it, it's otherwise apparently a valid and lawful search warrant, that it's okay. But that's not what's happening here. Here they're doing the reverse. They're saying it's okay to not get a warrant, and as long as we're not prohibited, then we can do it. In effect, they're asking for forgiveness later and asking for Leon to save the search that is otherwise unconstitutional, rather than doing what they're supposed to do, being protective and getting the warrant first. A warrantless search is per se unreasonable. The standard is to get a warrant, particularly if there's a gray area and there's doubt, have the judicial magistrate sanction the search because they have all the relevant facts and circumstances and have determined that the standards are met. And if you rely on that under that circumstance and the precedent changes later, that's okay. But that's not what's happening. Here there is a pattern and practice of not getting a warrant and then hoping that Leon saves you because you're willfully blind and ignorant of the law because you're not getting training. So you're not a reasonably well-trained officer. You're not acting in good faith reliance on what is otherwise apparently a good search warrant because you're not giving the judicial magistrate all the information and you're not going and looking for that case law. There was no training. Does your argument, does it really pivot on the lack of training, what you sort of, kind of a willful blindness? Is that really the core of your argument? That is a portion of the argument, Your Honor, because that was not developed in Perez but is here. And in Perez it's the same department, the same city, the same officer, the same canine. Here, but in that record, there was not the development of the lack of training. Here, again, it's the same officer, department, city, canine, almost the exact same time of day in what is not the same apartment building but has apparently the same apartment structure. And again, officers are saying, let's not get a warrant because Leon is going to save us anyway. They were on notice of Jardine in 2013, Burston in 2015, Hopkins in 2016. And remember, this is Davenport, so you can look out your kitchen window and see Illinois and see the Seventh Circuit. And the Seventh Circuit has Whitaker. That came down in 2016, I believe. So they are on notice of all of this precedent, which should alert them that they have at least a potential constitutional problem here. And instead of saying, we should do what we're supposed to do and get a warrant, they're relying on ignoring all of this and then hoping that Leon saves them, if for no other reason by sheer luck. Ms. Yager, you're within your rebuttal. You can continue if you like or reserve. I would reserve. Thank you, Your Honor. All right, thank you. Mr. Call? Thank you, Judge. Judge Smith, may it please the Court? Andrew Call for the United States. The government's view is that this case is on all fours with Perez. The searches occurred within one month of one another in the same city as Ms. Yager mentioned. They involved the same handler and the same canine. The only difference is procedurally a little bit in the Perez case. Judge Jarvi found that the apartment complex was not curtilage, whereas, and this Court then found the good faith exception applied. Whereas, in this case, Judge Rose found that it was curtilage, but she then applied the good faith exception as this Court did in Perez. While there are a lot of interesting legal issues built into the briefing here, the question comes down to whether there's any meaningful difference between this case and Perez. And the government believes there is not. As to the Leon test, we think that's an objective standard and that the officers could have relied and were relying on the case law from the circuit. Well, what about the evidence that was, or the statement the affidavit made to the magistrate to obtain the warrant? Why wasn't there more information included about what the dogs had actually done? And you're talking about the first warrant? Yes. I think Judge Rose, in denying the Franks hearing in her discretion, found that wasn't necessary. There was the discussion of the first dog currently having alerted on all of the doors in that building. And I guess her thoughts were, in a high crime area, it wouldn't have been a surprise. I think that is exactly what Judge Rose's thought process was, and it didn't seem to bother her particularly. But that shouldn't justify the police being able to essentially search every apartment simply because of that. What made the search of this specific apartment something where there was a greater likelihood of the presence of contraband? They had other information suggesting that Hines was... What was the other information that supported the issuance of the warrant? The other information was, and it might be something that the court would characterize as hunch information or intelligence information. There were complaints about activity in the vicinity, loitering, vehicle traffic. There was an alleged armed robbery that had not been reported. This is around Apartment 2 at 314 Benson Ross Place, the first place where he had resided. So there were causes for concern with respect to that particular residence. And then, again, the dog sniff gave them the probable cause for the search of that particular residence. But again, with the law being as it was in the summer of 2019, this court had not clearly said that a search of an apartment building, the interior of an apartment building, even a locked apartment building, was a Fourth Amendment violation. Mr. Cole, what about the lack of training that defense counsel raises? What role does that play in the Leon good faith in your view? Can it play a role? I think it can play a role, Judge Kelly. Certainly, I believe there is some discussion that the officer had had a conversation with the prosecutor about Jardines, but there wasn't certainly any training per se about that. Certainly, that would help in a Leon analysis. But here where, and this is why I am suggesting an objective test, where we have here, and assume just for the sake of argument, we have two identical searches. In one case, the officers know all about the case law. In another search, they know nothing about the case law. The results shouldn't be any different if that's the state of the case law in the controlling jurisdiction. This is an area of the case law where the law is evolving, where the case law, Ms. Yeager mentioned the Whitaker case across the river in Illinois. If you went further to the Fourth Circuit, the law would be different yet. The states have been on both sides of the issue as well. This court, as of that time, had not definitively ruled how Jardines applied to a multi-family common law code. We do know that Esther, which is the Riesler, which remains with Lawless, says there's no reasonable expectation of privacy in the locked hallway. So we have to really, if there's... Is there really any contradiction between those two cases? Yes, I mean, the Supreme Court justices would say there is, because... Well, but there may not be an expectation of privacy in the hallway, but perhaps within three inches of the doorknob, there might be. That might be curtilage. Under the trespass theory rather than under the reasonable expectation of privacy theory that Whitaker went with and that Justice Kagan... I'm just saying that I think you could harmonize the two cases. I understand the court's point. But, again, and curtilage is a little bit difficult of a problem, of a concept to apply to an interior hallway. It doesn't fit as neatly as an analytical tool as it does to an exterior. And I think when you compare Beau Perez and look at Judge Rose's analysis here, look at the arguments we've made, look at some of the other cases, it's a little bit difficult to say, well, how can somebody exclude people from their apartment door in a public throughway? I think this is an area of the law that's probably going to continue to evolve. But at this point in time, in August and September of 2019, we do not think it was a Fourth Amendment violation for the Denver Police Department to use canine searches with, incidentally, the permission of the landlord. We think, at minimum, affirming that on the basis of good faith, as this court did in Perez, would be an appropriate resolution. And unless the court has further questions, I would otherwise submit the case on the briefs in the 28-J letter. Thank you, Mr. Carl. Your Honor, the language of Leon, of Cannon, of Hopkins, those are all quite clear when they state the standard of a reasonably well-trained officer acting in reasonably good faith reliance on an otherwise apparently valid search warrant. If you don't have those predicate threshold showings, you don't have a good faith exception. Good faith exception is exactly that, good faith. But if you don't have any training, either through negligence or purposeful action, then you cannot be acting in good faith. Because if you had, you would have some at least basic training on what the law is. The law enforcement officers had Jardim, they had Kelo, they had Burstin, they have Leon, they have Cannon, they have Hopkins. All of those cases had come down, and not just recently, many years prior. If they had looked at Burstin, this court has had a similar kind of case, and refused to apply the Davis and Leon good faith exceptions because the facts were dissimilar. Instead, they're ignoring the precedent, refusing, or at least just failing, to be trained on what the state of the law is, and then saying, it's okay, Leon's going to save us anyway. If nothing else, they should have known that this is a gray area, and that's why they should be getting warrants, and not just relying on Leon to bless everything it is that they want to do. It's not a common area in this case, because we have the actual touching of the curtilage door. This is clearly Jardim's, and you should excise the unlawful searches from the search warrant, paragraphs three and five, and then there's no probable cause at that point. I see my time has expired. Thank you, Your Honor. Thank you, Ms. Jaeger. The court appreciates both counsel's presentations to us this morning. We will take the case under advisement.